UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER ABRON,

       Petitioner,                              Hon. Gordon J. Quist

v.                                                        Case No. 1:11-CV-286

CARMEN PALMER,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

       This matter is before the Court on Abron's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Abron's petition be **denied**.

**BACKGROUND**

       As a result of events which occurred June 22, 2008, Petitioner was charged with assault with the intent to commit armed robbery, conspiracy to commit armed robbery, and accessory after the fact to a felony. (Trial Transcript, February 16, 2009, 6-8). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

1

**Roger Davenport**

As of June 22, 2008, Davenport was employed as a clerk at the Capri adult bookstore in Grand Rapids. (Trial Transcript, February 17, 2009, 48-49). Davenport was working that afternoon and shortly after 4:00 p.m. Petitioner entered the store. (Tr. 56-57). Davenport was the only employee in the store at the time and no other customers were in the store. (Tr. 58). Petitioner "wandered around" the store for approximately five minutes and eventually "picked out a video." (Tr. 56-57). Petitioner paid for his purchase and then exited the store. (Tr. 58).

A "couple minutes" after Petitioner departed, another man entered the store, stood near the doorway, pointed a weapon at Davenport, and stated, "give me the money." (Tr. 58-62). Davenport responded, "we don't have any money," immediately after which the man fired his weapon at Davenport. (Tr. 59). The bullet missed Davenport and struck a display case. (Tr. 64). The gunman then fled from the store at which point Davenport contacted the police. (Tr. 65, 72-73).

**Harvey Nauta**

A "little bit" after 4:00 p.m. on the afternoon of June 22, 2008, Nauta was in a vehicle with Allen Peterson who was driving in the vicinity of the Capri bookstore. (Trial Transcript, February 17, 2009, 88-89). As they neared the Capri, Nauta observed a man "running out of the Capri" carrying a handgun. (Tr. 88-90). The man in question ran towards a van that was parked nearby. (Tr. 89-92). Nauta noticed that the driver of the van was "scrunched down" and was looking back in the direction of the Capri. (Tr. 90-92). The handgun wielding man who Nauta observed running from the Capri entered the van which then sped away at "a good clip." (Tr. 92-94). Nauta immediately contacted the police. (Tr. 96).

**Allen Peterson**

At approximately 4:15 p.m. on the afternoon of June 22, 2008, Peterson and Harvey Nauta were riding in Peterson's vehicle. (Trial Transcript, February 17, 2009, 109-110). As Peterson drove near the Capri bookstore, he observed a man sitting "scrunched down" in the driver's seat of a van. (Tr. 110-11). Peterson then observed a man carrying a gun and running toward the van. (Tr. 112-16). When the man reached the van, he climbed in the passenger side door at which point the van "took off. . .very quickly. . .[with] purpose." (Tr. 116-17).

**Frank Collins**

As of June 22, 2008, Collins was employed as a City of Grand Rapids Police Officer. (Trial Transcript, February 18, 2009, 5). At approximately 4:15 p.m. that afternoon, Collins was dispatched to the Capri bookstore to investigate a report of a man "running out of the building with a gun." (Tr. 6). After arriving at the Capri, Collins spoke with Roger Davenport. (Tr. 7-8).

**Joel Bowman**

As of June 25, 2008, Bowman was employed as a City of Grand Rapids police officer. (Trial Transcript, February 18, 2009, 10-11). That morning, Officer Bowman and another police officer observed a van matching the description of the van involved in the June 22, 2008 attempted robbery of the Capri bookstore. (Tr. 11-15). Bowman effected a traffic stop of the van which was being driven by Petitioner. (Tr. 12-15). Petitioner was arrested on a driving violation and taken into custody. (Tr. 13).

**Patrick Needham**

As of June 23, 2008, Needham was employed as a Detective for the City of Grand Rapids Police Department. (Trial Transcript, February 18, 2009, 18-19). Needham was assigned to investigate the attempted robbery of the Capri bookstore the previous day. (Tr. 18-19). Detective Needham's initial investigation into this matter revealed that Petitioner was associated with a van that matched the description of the van that participated in the attempted robbery of the Capri bookstore. (Tr. 19-20). Following Petitioner's arrest, Detective Needham, along with another detective, interviewed Petitioner. (Tr. 20-21). At the outset, Petitioner was advised of his Miranda rights and agreed to waive his Miranda rights and speak with the detectives. (Tr. 21).

Petitioner acknowledged that he was at the Capri bookstore on the day of the attempted robbery, but initially asserted that he went there alone. (Tr. 22). When the detective confronted Petitioner with evidence that he did not go to the bookstore alone, Petitioner changed his story and acknowledged that he went to the bookstore with his cousin, Jermaine Robinson. (Tr. 22-23). Petitioner later acknowledged that he was aware at the time that Robinson had previously committed armed robbery. (Tr. 24-25). Petitioner later told the detective that he drove Robinson to the Capri bookstore at Robinson's request. (Tr. 26). Petitioner stated that after the pair arrived at the bookstore, he entered the bookstore first. (Tr. 28-29). After Petitioner exited the bookstore, Robinson entered the bookstore while Petitioner waited in the vehicle for Robinson to return. (Tr. 28-29, 36-37). After Robinson returned to the vehicle, the pair "took off." (Tr. 29, 37). Petitioner later observed Robinson carrying a handgun. (Tr. 27).

**Daryl Clemens**

As of June 22, 2008, Clemens was employed as a crime scene technician for the City of Grand Rapids Police Department. (Trial Transcript, February 18, 2009, 46-47). At approximately 4:30 p.m. that afternoon, Clemens was dispatched to the Capri bookstore to investigate an attempted robbery. (Tr. 47). Clemens took photographs of the damage to the bookstore and recovered a bullet fragment. (Tr. 47-61). Clemens also obtained latent fingerprints from the doorway to the bookstore. (Tr. 62). These fingerprints were identified as belonging to Jermaine Robinson. (Tr. 62-63).

**Linda Carter**

Carter is Petitioner's mother. (Trial Transcript, February 18, 2009, 72-73). As of June 22, 2008, Carter owned a van which she allowed Petitioner to drive. (Tr. 73-74). On June 22, 2008, Carter "let [Petitioner] use the van," but she did not know where he went. (Tr. 77-78).

Following the presentation of evidence, the jury found Petitioner guilty of assault with the intent to commit armed robbery, but acquitted him of conspiracy to commit armed robbery and accessory after the fact to a felony. (Trial Transcript, February 18, 2009, 165-66). As an habitual offender, Petitioner was sentenced to serve 20-60 years in prison. (Sentencing Transcript, March 24, 2009, 10). Because Petitioner was on parole when he committed the offense in question, he was also sentenced to serve a consecutive sentence of 8-25 years for the paroled offense. (Tr. 10). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I.  Both Michigan law and the Michigan and United States Constitution require sufficient evidence to convict a defendant. There was insufficient evidence in this case that defendant committed an assault with the intent to rob while armed.

> II. The trial court reversibly erred in denying defendant's motion to quash on the charges of (1) assault with intent to rob armed, (2) conspiracy to rob armed, and (3) accessory after the fact to a felony.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Abron*, 2010 WL 2541071 (Mich. Ct. App., June 24, 2010). Asserting the same issues, Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Abron*, 789 N.W.2d 452 (Mich. 2010). On March 14, 2011, Petitioner initiated the present action in which he asserts the two claims above.

## STANDARD OF REVIEW

Abron's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, Blanton v. Elo, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the

requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.      Sufficiency of the Evidence**

Petitioner asserts that he is entitled to relief because the prosecution failed to present sufficient evidence to support his conviction for assault with the intent to commit armed robbery.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit

of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Pursuant to Michigan law in effect as of June 22, 2008, an individual was guilty of armed robbery if the following elements were satisfied: (1) an assault; (2) a felonious taking of property from the victim's presence or person; (3) while the defendant is armed with a weapon. *See People v. Rodgers*, 645 N.W.2d 294, 298 (Mich. Ct. App. 2001). It does not matter whether the victim "actually owned the property taken," as the prosecution need only establish that the property was taken from the victim's presence and that "the victim's right to possess the property was superior to the defendant's right to possess it." *Id.* An assault is defined as "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Walker*, 2003 WL 22928770 at *6 (Mich. Ct. App., Dec. 11, 2003).

Petitioner was convicted on an aiding and abetting theory. Under Michigan law in effect as of June 22, 2008, a person "who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v. Izarraras-Placante*, 633 N.W.2d

10

18, 22 (Mich. Ct. App. 2001). To establish that an individual aided and abetted a crime, the prosecution must prove that: (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *Id.*

The evidence in this case, while perhaps not overwhelming, was more than sufficient to support Petitioner's conviction. The evidence revealed that on the day in question, Petitioner drove his mother's van to the Capri bookstore where he "wandered around" for several minutes before purchasing an item. Almost immediately after Petitioner exited the bookstore, another man entered the store and attempted to commit armed robbery. While this attempted robbery was taking place, a man was observed sitting "scrunched down" in the driver's seat of a van outside the bookstore. After the robbery attempt was thwarted, the robber fled the bookstore and jumped into the aforementioned van which immediately sped away. Petitioner acknowledged going to the Capri bookstore with his cousin, whose fingerprints were discovered in the doorway of the bookstore. In sum, the evidence revealed that an attempted armed robbery was committed at the Capri bookstore on the day in question. The jury could reasonably have concluded that Petitioner's cousin committed the robbery and, moreover, that Petitioner assisted in such and either intended that result or knew that his cousin intended such when he provided assistance.

The Michigan Court of Appeals rejected Petitioner's insufficiency of the evidence claim, finding as follows:

> In the present case, the prosecution presented sufficient evidence to allow a rational trier of fact to conclude that defendant aided and abetted the crime of assault with intent to commit robbery while

11

armed. On appeal, defendant argues that since there was no direct evidence of defendant's active participation in the crime with knowledge of the principal's intent to commit the crime or the identity of the principal, the jury was precluded from convicting him of the charged crime. Such an argument is inconsistent with Michigan law. As stated in *Wilkens, supra,* a jury is permitted to convict a defendant on the basis of circumstantial evidence and the inferences drawn from that evidence. The testimony at trial demonstrated that defendant, drove his mother's van to the Capri III bookstore with his cousin, Jermaine Robinson, as his passenger. Defendant, by his own admission, entered the store alone, remained in the store for several minutes and left after making a purchase. The sole employee working at the store that day, Roger Davenport, testified that moments after defendant left the store, a masked gunman entered the store through the backdoor and attempted to rob it. Additionally, eyewitnesses outside the store observed a man sitting in a van that van fit the description of the one driven by defendant. The man sitting in the van was slouching down in his seat and quickly drove off after a man holding a gun entered his vehicle. Days later, defendant was arrested when he was pulled over in a van similar to the one observed by eyewitnesses. Robinson was not apprehended. While discussing the crime with police, defendant gave several inconsistent accounts of the events in question. In one version he acknowledged both that Robinson had previously committed an armed robbery and he saw Robinson with a gun on the evening after the robbery. In another version he denied Robinson was ever with him. In a later version, defendant stated that when he returned to the van from the Capri, Robinson was not there, and that he later returned form an unknown destination.

Viewing the evidence in the light most favorable to the prosecution, the jury could have concluded that Robinson was the individual who attempted to rob the store and that defendant was the individual driving the van. As the trial court stated in response to the motion for directed verdict, it is reasonable to conclude that defendant drove Robinson to the store in order to aid him. Likewise, it is reasonable to infer that defendant entered the store in order to scout it out before Robinson entered behind him and that defendant slouched down in the van during the attempted robbery in order to avoid being identified. Under that reasonable scenario, which is consistent with the evidence presented at trial, defendant had knowledge of Robinson's intentions and intended to assist him with the commission of an armed robbery. Although there is no direct evidence that

> defendant was aware of Robinson's intentions, "[i]ntent may be inferred from all the facts and circumstances." The evidence, when viewed in the light most favorable to the prosecution, permitted such an inference. Consequently, the prosecution presented sufficient evidence to support a conviction on a theory of aiding and abetting. Defendant is not entitled to relief.

*Abron*, 2010 WL 2541071 at *1-2 (internal citations omitted).

The decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue on which habeas relief may be granted.

II.     **Motion to Quash**

Following a preliminary examination, it was determined that there existed probable cause that Petitioner committed the crimes with which he was charged. (Dkt. #15). Petitioner subsequently moved, without success, to quash the determination to bind him over for trial. (Dkt. #18). Petitioner now claims that he is entitled to habeas relief on the ground that there did not exist sufficient evidence to bind him over for trial on the various charges.

As to the two charges of which Petitioner was acquitted, Petitioner's request for habeas relief is not cognizable as he fails to satisfy the "in custody" requirement. *See, Magwood v. Patterson*, 130 S.Ct. 2788, 2797 (2010) (habeas relief under 28 U.S.C. § 2254 is only available to prisoners being held in custody "pursuant to a state-court judgment"). As for Petitioner's request for habeas relief concerning his conviction for assault with the intent to commit armed robbery the result is the same. Alleged deficiencies in the state's initial criminal proceedings are not cognizable

in a federal habeas proceeding, as such alleged deficiencies do not undermine the validity of any subsequent conviction. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (the Court recognized "the established rule that illegal arrest or detention does not void a subsequent conviction"); *O'Hare v. Woods*, 2012 WL 1079753 at *13 (E.D. Mich., Mar. 30, 2012) (claim that insufficient evidence was presented at preliminary hearing to bind petitioner over for trial is not cognizable on federal habeas review); *Phillips v. Woods*, 2011 WL 6338903 at *14 (E.D. Mich., Sept. 8, 2011) (same).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Abron's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 10, 2012         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge